IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANTHONY TAFT VADEN, ) | |
| ) | Civil Action No. 7:21cv00155 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MAJOR ENOCHS, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) |         United States District Judge |
| Defendants. ) | |

Anthony Taft Vaden, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983, alleging that the defendants labeled him a snitch in front of other inmates, fabricated an institutional charge against him, disclosed his medical records to other inmates, and retaliated against him, all while he was housed at the Lynchburg Adult Detention Center ("LADC"). The defendants filed a motion for summary judgment arguing that Vaden failed to fully exhaust available administrative remedies before filing this action. After reviewing the evidence, the court agrees and will therefore grant the defendants' motion for summary judgment.

I.

Vaden alleges that in October 2020, he saw defendant Nurse Ayers for "chest pains" and was transported to the emergency department by defendant Officer Knichel and another officer. (ECF No. 10, at 2.) Upon his return to the LADC, Nurse Ayers placed in Vaden in a "medical seg[regation]" housing unit. (*Id.*) After seeing a doctor, Vaden was released from the medical segregation housing unit and moved to housing unit L and then to housing unit H. He claims that, while he was in housing unit H in January 2021, two inmates approached him

and said that Nurse Ayers had told them that Vaden "did not have a heart attack" and that Officer Knichel told them that Vaden had "told on the unit[,] saying that 'th[e]y had contraband.'" (*Id.*) Vaden alleges that the two inmates threatened him and claimed that he was "a 'snitch who had to be dealt with.'" (*Id.* at 3.) Vaden states that he notified an officer of the threat and was placed in a protective custody housing unit on January 8, 2021. The next morning, Vaden was removed from protective custody without a hearing and placed in housing unit G. While in that housing unit, Vaden states that he asked defendant Officer Canzone to "turn the sound up," but Canzone refused and stated that he "d[id]n't help snitches." (*Id.*) After Vaden told him that he would file a "formal complaint," Officer Canzone stood in the pod and "yelled 'go ahead, you['re] a snitch and everyone [k]no[w]s it.'" (*Id.*) Vaden filed an informal complaint and defendant Major Enochs determined that it was unfounded.

Vaden alleges that on January 18, 2021, he was placed in "the hold ICC"[1] by Maj. Enochs and a sergeant as retaliation and "pending investigation." (*Id.*) He states that on January 26, 2021, he was "ICC'd"[2] and placed in a "maxi[m]um sec[urity]" housing unit. (*Id.*) Vaden claims that his cellmate had COVID-19 and he was "removed from M unit and placed in D unit d[ue] to inmates having COVID-19." (*Id.*) Vaden claims that while he was in housing

---

[1] ICC stands for Institutional Classification Committee. The court takes "the hold ICC" to mean that he was awaiting an ICC hearing. Consistent with this understanding, there is a Notification of Referral to ICC dated January 18, 2021, in the record. (*See* ECF No. 20-4, at 8.) The Notice states that, at the request of Major Enochs and a sergeant, and pending investigation, Vaden would be brought before the ICC on a date "to be set" for consideration for administrative segregation. (*Id.*)

[2] The court takes this mean that Vaden was given an ICC hearing.

unit D, Nurse Ayers refused to give him one of his medications during pill call and, after a "brief argument" with her, Nurse Ayers "yelled out that[']s why you[']re running from pods[, because] 'you[']re a snitch.'" (*Id.*) Vaden claims that Nurse Ayers also accused him of telling inmates about an alleged "sex tape" that she is purportedly in. (*Id.* at 8.) After this incident, he claims that "different inmates" approached him "in aggressive manners" and asked him why Nurse Ayers and other officers were calling him a snitch. (*Id.* at 4.) Vaden states that he "fear[ed] for [his] safety" and wrote to a captain about it. Afterward, Vaden was placed back in housing unit M, a maximum security unit, "due to inmates [being] cleared of [] COVID[-19]." (*Id.*) Vaden filed a request, asking why he had been placed in a maximum security housing unit, and he was given "different explanation[]s." (*Id.*)

Vaden claims that on February 26, 2021, Nurse Ayers "pulled [him] out of the unit" and "confronted" him about a "sex tape video [and] pic[ture] that her boyfriend had sent to [Vaden]." (*Id.*) Vaden alleges that Nurse Ayers was "upset" and "trying to intimidate" him. (*Id.*) After their alleged interaction, Vaden states that he saw Nurse Ayers speaking with three other inmates. Later, those inmates allegedly approached Vaden and said that Nurse Ayers had told them that Vaden had snitched on inmates in another housing unit. Vaden claims that the inmates then "tried to coax [him] away from camera[s]," but he "did not fall for their trick." (*Id.*) Vaden states that he was "surrounded in [a] cell w[h]ere [an] inmate pulled a knife on [him] saying [he] had to leave the[ir] pod." (*Id.*) Vaden asked to speak with a staff member and was subsequently placed in a segregation housing unit.

On March 28, 2021, Vaden claims that Nurse Ayers came to his housing unit and

"fabricated an institut[io]nal charge against [him]" for failing "to go back to [his housing] unit." (*Id.* at 5.) Vaden was later transferred to the Halifax Adult Detention Center.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to

determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

The defendants argue that Vaden failed to exhaust available administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). The court agrees and will grant their motion for summary judgment.

### A.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 & 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made

clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

## B.

In support of the defendants' motion for summary judgment, Joshua Salmon, Administrator of the Blue Ridge Regional Jail Authority ("BRRJA"),[3] provided a declaration and the BRRJA Standard Operating Procedure 15.01 governing Inmate Grievance Procedures ("Grievance Procedures") (ECF No. 20-6, at 4-7). The Grievance Procedures establishes a multi-step grievance process at BRRJA facilities.

First, an inmate must try to verbally resolve the situation with the officer assigned to his housing unit. If the situation is unresolved, the inmate must file an inmate request, which the shift leader responds to in writing. This completes the informal grievance process. (Salmon Decl. ¶ 4.)

---

[3] The BRRJA has five jail facilities, including the LADC. (Decl. of Joshua Salmon ¶ 1, June 28, 2021 [ECF No. 20-6].) As Administrator of the BRRJA, Salmon oversees all five facilities and maintains records of every inmate request, grievance, and grievance appeal made by BRRJA inmates. (*Id.* ¶¶ 1 & 8.)

If the situation is still unresolved, the inmate must request a grievance from the housing unit officer and submit the grievance to the housing unit officer. The housing unit officer then forwards the grievance to the Site Administrator of the facility. The Site Administrator reviews the grievance and responds in writing. (*Id.* ¶ 5.)

If the inmate is not satisfied with the response to the grievance, he may appeal to the BRRJA Administrator. An appeal to the BRRJA Administrator is the final level of review. If the inmate fails to complete any step in the process, he failed to exhaust his administrative remedies. (*Id.* ¶¶ 6–7.)

## C.

Administrator Salmon maintains all grievance records for BRRJA inmates and has determined that Vaden did not satisfy the grievance procedure regarding any of Vaden's claims in this action. (*Id.* ¶ 10.)

Salmon avers that, although Vaden submitted some grievances related to the allegations in this action, he did not submit any grievance complaining that Nurse Ayers or Officer Knichel ever called him a snitch. (*Id.* ¶ 9.) Further, Vaden did not submit a grievance *appeal* regarding any of the allegations in this action.[4] (*Id.* ¶ 10.)

---

[4] The grievance records submitted to the court show that Vaden filed two inmate requests and two grievances concerning the claims in this action. On January 10, 2021, Vaden filed an inmate request complaining that on January 9, Officer Canzone yelled out in the pod that Vaden "is a snitch" and offered "items" to three inmates if they would "get [him]." (*See* ECF No. 20-4, at 4.) On January 11, Vaden filed a grievance stating that Officer Canzone yelled in the pod that Vaden was a "snitch" and that three inmates told Vaden that Officer Canzone had offered to "look out" for them if they would "get" him. (*See* ECF No. 20-4, at 6.) On April 2, 2021, Vaden filed an inmate request complaining that Nurse Ayers had "pulled [him] out" of the pod and "confronted" him. (*See* ECF No. 20-5, at 1.) On April 5, Vaden filed a grievance stating that Nurse Ayers pulled him out of his housing pod and questioned him about a sex video that Ayers is allegedly in and about Vaden showing the video to other inmates (*See* ECF No. 20-5, at 2.) Vaden also stated that Nurse Ayers retaliated against him by filing a "bog[u]s" disciplinary charge against him. (*Id.*) There is no other evidence of any other inmate request,

In response to the defendants' motion for summary judgment, Vaden submitted two unverified statements.[5] (*See* ECF Nos. 22 and 24.) In the first unverified response, Vaden states that Nurse Ayers sought "revenge" against him, and that Major Enochs and Officer Knichel "tried to force [him] to be placed in the same cellblock as [his] enem[ies]" and "deliberately tried to place [his] life in danger."[6] (ECF No. 22, at 1.) In his second unverified response, Vaden re-alleges substantive claims from his amended complaint. (*See* ECF No. 24.) He also summarily states that he "used ever[y] rem[edy] to resolve these issue[s] befor[e] filing the 1983 form." (*Id.* at 1.) He states that "appeals from grievances were sent to Joshua Sal[mon] who also denied [his] complaints as unfounded after discussing with Major Enochs who also found [his] complaints unfounded." (*Id.*) But this allegation is from an unverified response and is contradicted by the undisputed evidence.

First, Salmon declared under penalty of perjury that Vaden did not submit a grievance complaining that Nurse Ayers or Officer Knichel called him a snitch. (Salmon Decl. ¶ 9.) Second, Salmon also declared under penalty of perjury that Vaden did not submit a grievance appeal regarding any of his claims. (*Id.* ¶ 10.) On summary judgment, Vaden cannot rest on unsupported statements in his brief to create a genuine dispute of fact. *Smith v. Blue Ridge Reg'l*

---

grievance, or appeal concerning the issues raised in this action.

[5] The court notes that Vaden was given notice of the motion for summary judgment filed against him and the opportunity to file counter-affidavits or other evidence "contradicting, explaining, or avoiding" defendants' evidence. (*See* ECF No. 21.)

[6] Vaden also submits offense reports, a classification report, notes, and an ICC referral notice in support of his substantive allegations against the defendants. (*See* ECF No. 22, at 2-7.) To the extent Vaden may be attempting to raise new claims in his response, the court notes that he has not amended his complaint and, therefore, any such claim is not before the court at this time.

*Jail Auth.-Lynchburg*, No. 7:17cv00046, 2017 U.S. Dist. LEXIS 211451, at *5 n.5 (W.D. Va. Dec. 22, 2017) ("Plaintiff's brief response to the motion for summary judgment is merely a brief and is not an affidavit or declaration, and thus, it does not constitute admissible evidence.") (citing Fed. R. Civ. P. 56(c)(4)); *McNeil v. United States*, 508 U.S. 106, 113 (1980) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.")). Accordingly, the undisputed evidence establishes that Vaden failed to exhaust his available administrative remedies concerning the claims in this action.

And Vaden has not put forth any evidence that he was prevented from properly exhausting available administrative remedies "through no fault of his own" and, thus, the court concludes that remedies were available to Vaden. Finding no genuine dispute of material fact on this issue, the court concludes that Vaden failed to exhaust available administrative remedies as to his claims raised in this action.

## IV.

For the reasons stated, the court will grant the defendants' motion for summary judgment.

**ENTERED** this 22nd day of February, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE